

Signed/Docketed
March 7, 2013

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 10-31659 MER |
| NEAL DAVID ELINOFF ) | |
| ) | Chapter 11 |
| Debtor. ) | |

## ORDER

THIS MATTER comes before the Court on the *Objection to Confirmation of Plan* ("Objection") filed by Lulu City Condominium Association, Inc. ("Lulu City"), and the *Response to Objections to Confirmation of Debtor's Amended Plan of Reorganization* ("Response") filed by debtor-in-possession Neal David Elinoff ("Debtor"). The Court has considered the evidence and legal argument presented by the parties, and hereby makes the following findings of fact and conclusions of law.[1]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L) as it involves the administration of the estate and confirmation of the Debtor's Chapter 11 Plan.

## BACKGROUND[2]

### A. The Condominium and the Agreement

The Debtor owns certain real property located at 280 South Mahoney Drive, #6H, Telluride Colorado 81435 (the "Condominium"). Lulu City is the homeowner association for the Condominium pursuant to the Amended and Restated Declaration recorded October 16, 2006. The Debtor granted a first

---

[1] The parties stipulated to the admission of the Debtor's Exhibits A, B, C, D, E and F and Lulu City's Exhibits B, C, L and O, and the Court admitted those exhibits and the stipulated facts into evidence. *See* Joint Statement (Docket No. 248).

[2] The background facts are taken from the Joint Statement (Docket No. 248), the approved Amended Disclosure Statement (Docket No. 169) and the written briefs filed by the parties.

deed of trust against the Condominium in favor of Bank of America, securing a promissory note in the original principal amount of $374,500. The Debtor granted a second deed of trust against the Condominium in favor of JPMorgan Chase Bank, N.A. securing a promissory note in the original principal amount of $75,000. The parties stipulated the value of the Condominium does not exceed the amounts owed to the holders of the first and second deeds of trust.

On July 20, 2007, Lulu City levied a special assessment for a remodel of its common elements. All owners were given the option of either paying their respective share of special assessment in cash or having Lulu City pay the special assessment for them using an association bank loan. The Debtor chose the latter option, and the association bank loan paid the Debtor's entire $69,397 share of the special assessment in full.

As a result, the parties entered into an Agreement for Association Financing of Special Assessment Lulu City Condominium Association, Inc. ("Agreement"), and the "Principal Amount Financed" totaled $69,397. The Agreement was drafted by Diane Wolfson ("Wolfson"), association counsel for Lulu City and owner/controller of the association management company for Lulu City. The Agreement was executed by the Debtor and recorded in the real property records of San Miguel County on November 8, 2007. More than two years later, Lulu City recorded a document entitled Release of Association Lien Created by Loan Agreement ("Release") in the real property records. From 2007 through the date of filing for bankruptcy relief, the Debtor paid the monthly amounts due under the Agreement.

**B.   The Debtor's Bankruptcy Filing**

The Debtor filed his Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on August 25, 2010 ("Petition Date"). Lulu City is a creditor of the Debtor, and filed Proof of Claim No. 28 asserting a secured claim for pre-petition assessments owed by the Debtor in the total amount of $7,042.03.[3]

The Debtor filed an Amended Chapter 11 Plan ("Amended Plan") and Amended Disclosure Statement.[4] The Amended Plan provides for the treatment of Lulu City's claim in Class 9, proposing any claim of Lulu City arising from the Agreement is an unsecured claim to be treated under Class 13 of the Plan. Class 13 provides allowed claims of unsecured creditors of the Debtor shall

---

[3] *See* Lulu city's Exhibit L.

[4] Docket Nos. 168 and 169. On February 3, 2012, the Court entered an Order approving the adequacy of the Amended Disclosure Statement. *See* Docket No. 171.

receive pro rata share of distributions from a general claims fund after payment in full of allowed administrative and unsecured tax claims.

Objections to confirmation of the Amended Plan were filed by five creditors, but Lulu City's objection is the only remaining unresolved objection to confirmation. Lulu City disputes the proposed treatment of its claim and asserts the special assessment is a statutory lien which continues against the Condominium. The Amended Plan recognizes the instant dispute, providing for alternative treatment of Lulu City's claim. If the obligation arising under the Agreement is determined to be unsecured the Debtor will retain the Condominium, and any outstanding regular monthly assessments will be paid on the effective date. If the Condominium is determined to still be encumbered by the obligation under the Agreement, the Amended Plan proposes to surrender the Condominium to the holders of the Class 7, 8 and 9 claims.

Lulu City's Objection to confirmation of the Amended Plan raised several other issues. However, Lulu City later stipulated the issues raised in the Objection are limited to only the nature and extent of the Class 9 Claim and the amount of its administrative claim, if any. Lulu City expressly waived all other objections to confirmation previously raised in the filed Objection.[5]

## DISCUSSION

The parties agree the instant dispute does not concern the common expense assessment levied annually on the Condominium. It is also undisputed the Debtor's portion of the 2007 special assessment was paid in full through the use of funds under the Agreement. The issue before the Court is whether the Debtor's remaining obligation to Lulu City under the Agreement is for repayment of an unsecured loan or a secured ongoing assessment. The parties agreed this matter could be resolved through submission of legal briefs together with admitted documents after resolving the Debtor's objections to certain exhibits. Accordingly, the Court will first address the evidentiary issues raised by the Debtor, and then turn to the merits of Lulu City's Objection to confirmation of the Amended Plan.

### A.   Parole Evidence is Admissible Because the Agreement is Ambiguous

The Debtor objected to the admissibility of Lulu City's Exhibits D, E, F, G, H, I, J, K, M and N to determine the nature of the obligation arising under the Agreement, and argues these exhibits should be precluded under the parole

---

[5]  *See* Stipulated Motion to Determine Issues Regarding Objection to Confirmation Filed by Lulu City Condominium Association (Docket No. 221) ("Stipulated Motion").

evidence rule because the intent of the parties is unambiguous. The Debtor also objected to Lulu City's Exhibits F, G, H, I, J, K, M and N as not relevant to determine the intent of the parties because those documents post-date the execution of the Agreement.

The parties agree the Agreement should be interpreted under Colorado law. Under Colorado law, a written contract "complete and free from ambiguity represents the objective intent of the parties and will be enforced according to its plain language. However, '[i]f the court determines a contract is ambiguous and its construction depends on extrinsic evidence, then the interpretation of the contract becomes a question of fact.'"[6] "[A] contract is ambiguous where the text of the agreement reasonably allows for varying interpretations. Unless there is an ambiguity in its terms, a court should avoid strained interpretations, give effect to the terms according to their ordinary meaning, and enforce the contract as written."[7] "A court should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear. In the absence of allegations of fraud, accident, or mistake in the formation of the contract, parol evidence may not be admitted to add to, subtract from, vary, contradict, change, or modify an unambiguous integrated contract."[8]

In the instant matter, the Court heard oral argument on the Debtor's objection to Lulu City's exhibits. At the center of the evidentiary dispute is the Agreement. After examining the language throughout the Agreement and considering the arguments of counsel, the Court finds the Agreement between Lulu City and the Debtor is ambiguous and unclear with respect to the whether the parties intended the Agreement to characterize the Debtor's remaining obligation as a loan versus an assessment. The following two provisions of the Agreement are particularly problematic, and support the conclusion the Agreement is ambiguous regarding the loan/assessment distinction:

> **Loan by Association; Payment of Special Assessment.** [Lulu City] will loan the Principal Amount Financed to the [Debtor] and the [Debtor] shall use such disbursed funds to timely pay the above-referenced special assessment. The parties agree that such loan funds

---

[6] *In re Parsons*, 272 B.R. 735, 753 (D. Colo. 2001) (quoting *Stegall v. Little Johnson Assocs., Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993)) (citations omitted).

[7] *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Graham,* 860 P.2d 566, 568 (Colo. Ct. App. 1993) (citations omitted)).

[8] *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996); *see also In re Andoh*, 370 B.R. 377, 382 (Bankr. D. Colo. 2007) (applying *Boyer* and Colorado's parole evidence rule to retail installment contract in bankruptcy context).

> disbursement and special assessment payment will be transferred by way of bookkeeping entries in [Lulu City's] accounts as follows:
>
>> Increase long-term asset of Association to reflect loan by Association to Owner
>> Decrease in Association cash to reflect loan of funds disbursed to Owner
>>
>> Decrease in special assessment receivable to reflect use of loan funds to pay assessment
>> Increase in Association cash to reflect income from special assessment.
>
> . . .
>
> **Assessments for Permanent Financing.** Starting on the first day of the month following the Loan Conversion Date, the [Debtor] shall pay [Lulu City] a regular monthly assessment comprised of the outstanding balance of the Principal Amount Financed and accrued interest starting on the Conversion date and based on a thirty year amortization. The [Debtor] shall pay [Lulu City] a lump sum, balloon payment of the entire outstanding Principal Amount Financed and all accrued interest thereon on the date the (10) years from the Conversion Date.[9]

After examining the plain language in the Agreement, and in light of the underlying pleadings and evidence, it is apparent to this Court that the terms of the Agreement do not clearly indicate whether the parties intended the Debtor's obligation to be a loan or an assessment. The first provision appears to create a loan agreement, while the second provision appears to create an ongoing monthly assessment.

In addition, the Agreement uses the terms "loan" and "assessment" interchangeably and without any consistency, lending support to both positions as to the proper characterization of the Agreement. Stated differently, the text of the Agreement as a whole allows for varying interpretations of the intent of the parties as to the loan/assessment charaterization.[10] Accordingly, the Court finds the Agreement is ambiguous such that parole evidence is admissible, and the Court hereby admits Lulu City's Exhibits D, E, F, G, H, I, J, K, M and N as extrinsic evidence to assist the Court with determining whether the parties

---

[9] Debtor's Exhibit B.

[10] *See In re Parsons*, 272 B.R. 735, 753 (D. Colo. 2001).

intended the Debtor's remaining obligations under the Agreement to be a loan or an assessment.[11]

The Court also finds Lulu City's Exhibits F, G, H, I, J, K, M and N are relevant to the instant dispute. These documents will assist the Court with determining the proper interpretation of the Agreement, and also the issue raised by the parties as to impact of the Release which post-dates the Agreement. In addition, the Court finds no prejudice to the Debtor in admitting these exhibits. Recognizing Lulu City's Exhibits F, G, H, I, J, K, M and N were drafted by Lulu City in hindsight over two years after execution of the Agreement, and recognizing this dispute is a contested matter to the Court, the Court will give each exhibit the weight it deserves.

**B.    The Positions of the Parties**

To be confirmed, a Chapter 11 plan of reorganization must comply with each requirement of 11 U.S.C. § 1129(a).[12] "The proponent of a plan must demonstrate compliance by a preponderance of the evidence."[13] The sole obstacle to confirmation of the Amended Plan is the characterization of the Debtor's remaining obligations under the Agreement.

In summary, "[i]t is the Debtor's position that the special assessment was converted to a loan secured by the property, which [Lulu City] subsequently released, and therefore the claim is a pre-petition unsecured claim."[14] In the alternative, the Debtor states "if the amounts due are a special assessment, that the assessment took place pre-petition, so all amounts due are pre-petition not post-petition amounts."[15] "It is [Lulu City's] position that the amounts due are a continuing assessment against the property authorized by the declaration, and which becomes due each month. These assessments have not been paid by the Debtor, and [Lulu City] claims these are unpaid post-petition administrative expense claims."[16] These competing positions are expanded below.

---

[11] *Id.* at 753 (citing *Boyer*, 915 P.2d at 1299).

[12] *In re Paige*, 685 F.3d 1160, 1177 (10th Cir. 2012). Unless otherwise noted in the text, all future statutory references are to title 11 of the United States Code.

[13] *Id.* (citing *Heartland Fed. Savs. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1165 (5th Cir. 1993)).

[14] Stipulated Motion, at ¶ 7.

[15] *Id.* at ¶ 9.

[16] *Id.* at ¶ 8.

### 1. *Lulu City's Position*

In addition to Lulu City's $7,042.03 unsecured claim for pre-petition arrears, Lulu City alleges the Debtor is in arrears for unpaid post-petition accrued monthly assessments under the Agreement, plus eighteen percent (18%) interest per annum and attorneys' fees and costs, in the total amount of $28,788.60. Lulu City argues the Agreement did not create a security interest in the Condominium beyond the rights Lulu City already had under the Declaration and CCIOA, which if correct, would be an automatic lien on the Condominium if the owner fails to pay assessments as they become due. Thus, Lulu City categorizes the Debtor's remaining monthly payments under the Agreement as additional regular post-petition assessments which run with the land by virtue of "Common Expenses" Section 13(H) of the Declaration.[17]

In addition, Lulu City asserts the post-petition monthly payments due under the Agreement are not subject to modification in the Debtor's amended Plan. Lulu City states the Agreement provides for an additional regular monthly assessment with a balloon payment due in 2017. Lulu City contends the monthly payments under the Agreement that became due pre-petition partly comprise Lulu City's pre-petition claim of $7,042.43, but the post-petition monthly payments are administrative claims which become due each month as ongoing post-petition assessments. In other words, Lulu City argues there is no "right to payment" under the Agreement until the payment becomes due, so the future amounts due are not a "claim" as of the Petition Date.

Lulu City also explained its position on recording the Release, asserting it did not inadvertently release Debtor from his obligation to pay assessments under the Agreement:

> Lulu City's position has consistently been that no lien on the unit was created by the Agreement or by recording the Agreement, and Lulu City's only purpose in recording the Agreement initially was to put future lenders and purchasers on notice of the higher monthly assessment. Nonetheless, Lulu City and its attorney wanted to minimize potential confusion the recorded Agreements were creating in the context of foreclosures and avoid the risk that the recorded

---

[17] Lulu City's Exhibit B; Debtor's Exhibit F. Declaration Section 13(H) provides as follows:

**Expenses that Benefit One or a Few Units** Notwithstanding anything to the contrary herein, any Common Expense, or portion thereof; that benefits only one Unit or fewer than all Units, may be assessed solely to the Unit or Units so benefitted as determined by the Board of Directors.

Agreements could be deemed liens that could be extinguished in a foreclosure.[18]

Lulu City argues it had no intention to create a lien against the Condominium by recording the Agreement, but in any event did not release the Debtor's underlying obligations under the Agreement by recording the Release.

Lulu City's reply brief focuses on the term "assessment" and asserts the plain language of the Agreement and the Declaration support the conclusion the Debtor's remaining obligation is an ongoing assessment, not a loan. Assuming this premise is correct, Lulu City further argues any unpaid assessments under the Agreement constitute a lien against the Condominium under the Declaration and CCIOA, thereby rendering the Release superfluous. Lulu City did not address the use of the term "loan" throughout the Agreement.

### 2. *The Debtor's Position*

The Debtor categorizes the monthly payments as loan repayments, and asserts Lulu City released any security interest it had against the Condominium for amounts owed under the Agreement *vis-a-vis* filing the Release. The Debtor asserts Lulu City only has an unsecured claim with respect to the remaining post-petition obligations under the Agreement, and thus, the Debtor may modify the repayment terms in his Amended Plan. The Debtor starts with the premise his portion of the 2007 special assessment was paid in full using a bank loan, and the intent of the Agreement was to establish financing repayment of the Debtor's portion. The Debtor believes the "assessment" language of the Agreement describes at best a method of repayment of the loan, but not an actual regular monthly assessment.

The Debtor also argues to the extent Lulu City ever had a security interest arising from the Agreement, such interest was released by filing the Release. The Release states "[t]he above referenced Loan Agreement is hereby released and shall no longer encumber the [Condominium]."[19] The Release refers the Agreement as the "Loan Agreement" three times, and does not contain the word "assessment" anywhere in the Release.

Regardless of the effect of the Release, the Debtor further contends Lulu City's lien is subject to being stripped. This argument rests on the assumption the Agreement is found to be a financing agreement. The parties stipulated the value of the Condominium is less than the first and second mortgages. The

---

[18] Docket No. 227, at p. 16 (citing Lulu City's Exhibits N and H).

[19] Lulu City's Exhibit O; Debtor's Exhibit C.

Debtor argues under Colorado law, first in time means even without the Release, Lulu City is last in line and wholly unsecured. Moreover, the Debtor argues any amounts due under the Agreement arose pre-petition.

The Debtor's reply brief clarified his argument the Release only released the security interest, not the underlying unsecured obligation. According to the Debtor, he continued pre-petition payments after the Release was recorded because he was aware of his continuing unsecured obligation under the Agreement. The Debtor also refined his position the remaining obligation arose pre-petition, pointing to the "prepayment" provision of the Agreement to demonstrate the monthly payments were not an ongoing assessment, but rather a pre-petition obligation or right to payment that arose pre-petition. Lastly, the Debtor argued the later steps taken by Lulu City to pass a resolution reclassifying the financing as an additional ongoing common expenses assessment violated the Declaration because the alleged "ongoing assessment" was not levied on all owners and was not put to a vote as required under the Declaration. Further, the "ongoing assessment" was only levied on owners opting for the financing agreements.

**C.    The Debtor's Remaining Obligation Under the Agreement are for Repayment of an Unsecured Loan**

While the Debtor's objections to the admission of certain Lulu City exhibits were overruled, Lulu City's exhibits prove fatal to its position. If anything, the steps Lulu City took subsequent to execution of the Agreement demonstrate the pained attempts Lulu City took to clean up the ambiguity created by the original Agreement. Based on its review of the documentary evidence presented, the Court concludes the Debtor's remaining obligations under the Agreement are for repayment of an unsecured loan.

*1.    Documents Prior to the Agreement*

Lulu City correctly points out it retained the power under the Declaration to "assess each Owner, in advance or in arrears . . . for additional Special Assessments from time to time as authorized herein[.]"[20] Prior to execution of the Agreement, Lulu City sent correspondence dated February 9, 2007, to the Debtor and other owners soliciting votes for a special assessment, and offering *inter alia* an option for owners to pay their pro rata share of the special assessment using "the association's commercial line of credit with Alpine

---

[20] Lulu City's Exhibit B; Debtor's Exhibit F.

Bank."[21]  The ballot accompanying the letter details the proposed action, stating Lulu City "will a) proceed with a comprehensive remodel project and impose a special assessment . . . and b) draw on a bank line of credit of up to $2.5 million, proceeds of which will be used . . . to allow owners to **finance** the foregoing special assessment, such line of credit to be secured by [Lulu City's] receivables."[22]

It is undisputed the Debtor voted in favor of the proposed action on a ballot, and the owners authorized the special assessment.  There is also no question Lulu City remodeled the common elements and acted within its authority under the Declaration to levy a special assessment against those owners benefitting from the remodel, including the Debtor.  However, the parties stipulated the Debtor's portion of the 2007 special assessment was paid in full with the Principal Amount Financed under the Agreement.  At that moment, the Debtor's share of the special assessment levied per the Declaration was paid in full, and the resulting obligation owed by the Debtor to Lulu City was not an additional special assessment under the Declaration.  Rather, from that point forward, the Agreement controlled the Debtor's remaining obligation to Lulu City and the Agreement is the operative document defining the obligation.  In other words, the Debtor's remaining obligation to Lulu City arises from the Agreement, not the special assessment under the Declaration or CCIOA.

During the time period between owner approval of the special assessment and execution of the Agreement, the Minutes of Board Meeting dated July 10, 2007 reflect Lulu City intended the following:

> to impose a special assessment of $2.5 million due in 60 days from the date of the invoice;
>
> to give owners one option to **finance the special assessment with the association** within such 60-day period;
>
> . . .
>
> to provide in the owner **loan agreement** that total construction loan interest starting with the date the [special] assessment is due shall be invoiced *pro rata* to the owners who elect to **finance with the**

---

[21] Lulu City's Exhibit D.  This letter further states "[t]his line of credit will not encumber your property except for assessments as they come due.  The association will assess you a monthly plus a final lump sum payment due in 10 years.  You can pre-pay the loan at any time without penalty."

[22] Lulu City's Exhibit E (emphasis added).

**association** and at the end of construction, there may be a *pro rata* adjusting assessment or refund based upon the actual construction loan interest for such period starting with the date the [special] assessment is due based on the amount each owner borrowed and the amount of time for which such owner borrowed;

to provide in the owner **loan agreement** for a monthly **assessment** for construction loan interest as set forth in the owner **loan agreement**;

to provide in the owner **loan agreement** that when the association loan is converted to a fully amortizing ten-year loan, the monthly **assessment** will be adjusted to reflect principal and interest on the same terms as the association has with its lender[.][23]

Wolfson was present at this board meeting, and the Debtor was not present. In the Court's view, the plain language in the minutes appears to contemplate loan agreements for owner financing. The Court finds the use of the term monthly "assessment" on two occasions seems interchangeable with a monthly payment under a loan agreement.

### 2. The Agreement and Documents Subsequent to the Agreement

The ambiguity of the Agreement is addressed above. However, the Court finds reason to revisit the language in the Agreement because, read as a whole, the terms of the Agreement are indicative of a loan agreement rather than an agreement to pay ongoing assessments.

First, the provision titled "Loan by Association; Payment of Special Assessment" discussed above supports the Debtor's position. In hindsight, Wolfson contends this section was included to reflect Lulu City's bookkeeping, and "[i]t was not intended to reflect a decision about how the Association treated the funds legally."[24] The Court does not agree. As drafted, the use of phrases such as "loan the Principal Amount Financed to the [Debtor]" "to reflect a loan by [Lulu City] to [the Debtor]" and "to reflect a loan of funds disbursed to [the Debtor]" indicates the arrangement between the parties was intended to be a loan. To read otherwise would torture the plain meaning of this language. Further, the Agreement does not define or state the Principal Amount Financed was intended be an assessment on top of the special assessment, let alone an ongoing assessment.

---

[23] Debtor's Exhibit A (emphasis added).

[24] Lulu City's Exhibit N, at ¶ 4.

Second, the Agreement contains a clear "Prepayment" provision, providing the Debtor "may prepay the Principal Amount Financed **at any time** without a prepayment penalty . . . ." This provision indicates a financing arrangement between the Debtor and Lulu City whereby the Debtor could repay the loaned funds at any time. Prepayment also indicates the obligation arose pre-petition at the time the Agreement was executed, and is not an ongoing monthly assessment with some obligations arising pre-petition and other arising post-petition.

Third, the "Runs with the Land" provision supports the Debtor's positions: 1) the Debtor's remaining obligations are limited to those under the Agreement; and 2) Lulu City intended to create a lien against the Condominium *vis-a-vis* the Agreement, and later released the lien by recording a Release. The provision states as follows:

> **Runs with the Land.** The obligations created hereunder, including of the [Debtor] to pay assessments and other fees, shall run with the land and shall be binding upon and be the obligation of the successors-in-interest of the [Debtor] to the Unit and all persons and entities owning and holding an interest in the Unit. This Agreement shall be recorded in the Office of the Clerk and Recorder for San Miguel County, Colorado, so that all such persons an entities who may in the future hold and own an interest in the Unit are on notice of the obligations contained herein.

Lulu City relies heavily on this provision for the proposition the parties intended to create an ongoing assessment that runs with the land. Although this provision attempts to make that jump, it is not adequately drafted to effect such an obligation. Specifically, the provision is circular, providing the Agreement creates an obligation, whatever that obligation is runs with the land, and the Agreement will be recorded to provide notice of the obligation under the Agreement. The Agreement does not state the obligation is an ongoing regular monthly assessment, and the Court will not alter the Agreement to read that way.

Lulu City's asserts it never intended to create and release a lien against the Condominium. In hindsight, Wolfson provided an Affidavit stating Lulu City rejected "having owners execute a note and deed of trust for their proportional share of the Alpine Bank Loan. . . . **Their reason at the time was that they did not want to encumber an owner's unit with another lien and prevent that owner from getting second or third mortgages**."[25] Wolfson points to the February 9, 2007 letter which states "this line of credit will not encumber

---

[25] Lulu City's Exhibit N, at ¶ 3.

your property except for assessments as they become due."[26]  She further asserts Lulu City intended "to treat the obligation to pay an additional monthly assessment as a regular assessment subject to its declaration and CCIOA.  I also concluded that the additional assessment was properly included in [Lulu City's] 6-month super priority lien . . . as a regular budgeted assessment."[27]  The Court finds Wolfson's statements regarding the lien problematic, and belied by Lulu City's post-Agreement documents.

The purported reason to record the Agreement was to put the world on notice the Debtor had some obligation to Lulu City.  Between the date the Agreement was recorded and the board meeting held December 9, 2009, Lulu City realized the Debtor's remaining obligations under the Agreement were not so clear.  Wolfson stated she "advised Lulu City that even though the Agreement did not create a lien to begin with, it might, nonetheless, help to 'unrecord' the agreements."[28]  At the board meeting, Lulu City decided to record releases of the "loan agreements" and "[p]repare and arrange for signature of new loan agreements."[29]  The Release was recorded five days later.

On January 14, 2010, Lulu City held a special meeting and adopted a Resolution.[30]  The Resolution was adopted by the Board with no votes from owners.  The Debtor asserts the Resolution cannot have the effect of creating a new special assessment without owner votes in favor of the Resolution.  As the Court concluded above, the Agreement is the operative document to determine the Debtor's obligation.  The Resolution states "the purpose of this Resolution is to clarify the nature of assessments under the Association Financing Agreement."  While Lulu city states their intent was always the same, and indeed the language in the Resolution is clear, the Court will not import the same language into the Agreement.[31]  The Court finds the language in the Resolution attempts to restructure the monthly payments as ongoing assessments that accrue post-petition.

---

[26] *Id.*

[27] Lulu City's Exhibit N, at ¶ 7.

[28] Lulu City's Exhibit N, at ¶ 8.

[29] Lulu City's Exhibit G.

[30] Lulu City's Exhibit H.

[31] As is the case here, in the absence of allegations of fraud, accident, or mistake in the formation of the contract, this Court will not use parole evidence to alter the terms of the Agreement. *Boyer v. Karakehian*, 915 P.2d at 1299; *In re Andoh*, 370 B.R. at 382.

Accordingly, in weighing the evidence presented, the Court finds the Debtor's remaining obligations under the Agreement are for repayment of an unsecured loan.

3.   *The Release*

To the extent the Release is relevant, the Court finds the Release is not ambiguous.  The plain language in the Release recorded in December 2009 clearly states "[t]he above referenced Loan Agreement is hereby released of record and shall no longer encumber the [Condominium]."[32]  The Release is titled "Release of Association Lien Created by Loan Agreement" and refers to the Agreement as the "Loan Agreement."  Although the Release does not address the Debtor's remaining obligations under the Agreement, the plain language in the Release clearly indicates an intent to release whatever encumbrance may have existed against the Condominium, if any.

The parties stipulated the value of the Condominium does not exceed the amounts owing under the first and second deeds of trust.  With no equity remaining it appears any obligation owed to Lulu City would be unsecured, but in any event the Court declines to reach this issue.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED the Objection to Confirmation of Plan filed by Lulu City Condominium Association, Inc. is OVERRULED.

IT IS FURTHER ORDERED the Debtor is granted leave to file an Affidavit in support of confirmation of the Amended Chapter 11 Plan of Reorganization within fourteen (14) days from the date of this Order.  The Court will review the matter for confirmation following submission of the Affidavit.

Dated March 7, 2013                              BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[32] Lulu City's Exhibit O; Debtor's Exhibit C.